LAKE SUPERIOR SHIP-CANAL, RAILWAY & IRON CO. *v.* CUNNINGHAM.

SAME *v.* DONAHOE. SAME *v.* FINAN.

*(Circuit Court, W. D. Michigan, N. D. July 27, 1890.)*

1. EJECTMENT — WHEN MAINTAINABLE — GRANTS OF PUBLIC LAND — VOID SELECTION — CONFIRMATION.
    Where, under a grant of public lands to aid in the construction of a canal, a selection is made of lands which had been appropriated under a prior grant, and so were not subject to selection under the later one, a subsequent act of congress confirming the lands to the canal company does not relate back to the date of selection so as to enable that company to maintain ejectment for the lands brought before the passage of the confirming act.

2. PUBLIC LANDS — RAILROAD AID — OVERLAPPING GRANTS — SURRENDER BY ONE GRANTEE.
    Where the limits of lands granted in aid of the construction of two branches of a railroad by the act of congress of 1856 overlap, a release and surrender of the lands in the common limits by descriptions, by a railroad company which has acquired the rights of both the original companies on those branches and by the governor of the state, in its behalf, to the United States, is a valid surrender of all the lands within the common or overlapping limits.

3. PUBLIC LANDS — GRANTS — FORFEITURE — CONFIRMATION TO INTERVENING CLAIMANTS.
    Act Cong. March 2, 1889, declaring a forfeiture of certain lands theretofore granted to the state of Michigan, in aid of certain railroads, provides, in section 2, that "this act shall not be construed to prejudice any right of the Portage Lake Canal Co. * * * to apply hereafter to the courts or to congress for any relief, legal or equitable, to which they may now be entitled." *Held*, that this special provision for the claims of the canal company excludes it from the benefit of the general provisions of section 3, which confirms the titles of all persons to whom any of such lands have been disposed of under color of the public land laws, where the government retains the consideration.

At Law. Action of ejectment.

The act of congress of June 3, 1856, granted certain lands in the upper peninsula to aid in the construction of certain railroads, one of them having two branches, running from the Wisconsin line to Marquette and Ontonagon, respectively. The later act of July 5, 1862, authorized the relocation of the route of said railroad on a line from Marquette to the south much further east, and made another grant in aid of its construction, upon condition that the lands originally granted along the route thus changed should be surrendered by the railroad company, upon whom they had been conferred, and by the state of Michigan to the United States. The Peninsula Railroad Company, to which the lands on the Marquette branch had been assigned, executed such a surrender. After this, the Chicago & Northwestern Railroad Company, having acquired the rights of the companies upon both said branches to the lands along their lines, executed a surrender and release of all the lands, by descriptions, on the Marquette branch from the Wisconsin line, and the governor, in behalf of the state, executed to the United States a surrender of the same lands. This being regarded by the interior department as not filling the requirements of the act of 1862, the last-named railroad company and the governor, upon the demand of the interior department, executed a further release and surrender of the lands on the Ontonagon branch. The present suits involved the validity and effect of the first release by the Chicago & Northwestern Railroad Company and the governor upon the lands in the common limits of the branches, and also of the later releases of the lands in the clear limits of the Ontonagon branch. Act Cong. March 2, 1889, relating to the forfeiture to the United States of lands theretofore granted to the state of Michigan, including those granted by the act of congress of June 3, 1856, in aid of certain railroads, which lands plaintiff herein claims by virtue of selection under a subsequent grant in aid of its predecessor, (the Portage Lake Canal Company,) provides in section 2 that "this act shall not be construed to prejudice any right of the Portage Lake Canal Co. * * * to apply hereafter to the courts or to congress for any legal or equitable relief to which they may now be entitled." Section 3, in general terms, confirms the titles of all those to whom any of such lands had been disposed of by the proper officers of the United States, or by selections of the state of Michigan, under color of the public land laws, in all cases where the government retains the consideration for such disposal.

D. H. Bull and John F. Dillon, for plaintiff.

B. Vooper and D. M Dickinson, for defendants.

SEVERENS, J. In the Cunningham case it would be unprofitable to restate our own views upon the principal questions. The court is constrained by the obligations of judicial decorum to hold that the release of the title to the clear lands on the Ontonagon & State Line Road, in which this tract was situated, executed by the Chicago & North-Western Railway Company, and by the governor of the state of Michigan to the United States, was unauthorized by law; and the selection of such lands

for the canal company, and the certification thereof by the secretary of the interior, were void.    If this land was confirmed to the present canal company by the act of 1889, while it might relate back to the date of selection for some purposes, it would not do so for the purpose of maintaining an action brought in the mean time.    To sustain the action of ejectment, the plaintiff must have had title at the commencement of the suit, and if it had not then a title it cannot succeed upon a right subsequently perfected.    The verdict in that case must therefore be for the defendant.

In the Donahoe case the land lies in the common limits of the Marquette & State Line and the Ontonagon & State Line branches.    It may be that the release by the Peninsula Railroad Company did not operate to release these lands, or a moiety thereof.    But the first release of the Chicago & North-Western Railway Company and the first release by the governor surrendered all the lands in those common limits.    This action was never repudiated by the state, nor, so far as appears, ever questioned. The land department has since acted upon the validity of that surrender, and we think its validity cannot be questioned by the defendant in this suit.    This land was selected for the canal company.    The selection was approved by the secretary of the interior, and the land certified by him to the canal company.    In that case the verdict must be for the plaintiff.

In the Finan case the land, as in the Cunningham case, is in the clear limits of the Ontonagon & State Line branch.    The title stands in the same plight as in the Cunningham case.    But the suit was commenced since the act of March 2, 1889, was passed, and it becomes necessary to decide whether the third section of that act operated to confirm the title of the canal company to the land in question.    If it were not for the express mention of the claims of the canal company in section 2, we should be prepared to hold, upon the liberal construction which should be given to statutes of this character, that the title of the plaintiff was confirmed by the provisions of section 3.    It is hard to understand why congress should have excluded one party from the scope of the justice which it was endeavoring to secure to those who had purchased the forfeited lands for value, under color of lawful authority, supposing they were acquiring a valid title, and have laid the scourge upon that one.    But it is a question of construction, and my Brother SAGE is of opinion that the specific mention of the canal company's claims in section 2 brings the subject under the rule which excludes the particular matter from the operation of the general provision; and while I have serious doubt whether the claim of the canal company in respect to these lands is so specifically dealt with and disposed of by the second section as to exclude it from the equity generally accorded by section 3 to all persons coming within the conditions there mentioned, I shall, with considerable hesitation, however, concur in his construction.    This conclusion leaves this case exposed to the opinion of the circuit judge in the Cunningham case, and there must be a verdict for the defendant in this case also.

SAGE, J.    I concur.